UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAKESK DEWAYNE WHITE,

    Petitioner,

    v.

THOMAS WINN,

    Respondent.
_____/

Case No. 18-cv-11582

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

### I. INTRODUCTION

Petitioner Rakesk Dewayne White, confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for two counts of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), three counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, possession of a firearm by a felon, Mich. Comp. Laws § 750.224f, and possession of a firearm in the commission of a felony, second offense, Mich. Comp. Laws § 750.227b(1). For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## II. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See, e.g., Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). The facts provide that:

> This case arises from an incident in which defendant and two accomplices discharged firearms numerous times into a van with five people in it, killing two of them and injuring a third person. A victim of the attack identified defendant at trial as one of the shooters; defendant was previously known to the victim. Additionally, the victim had repeatedly identified defendant as a participant in the shooting prior to trial, including at defendant's preliminary examination. However, on a single occasion, the victim had also recanted his identification of defendant as one of the shooters. This recantation occurred during an audiotaped interview conducted by an investigator employed by an attorney who, at the time, represented one of defendant's accomplices. The victim, in explaining the recantation, testified that he had been kidnapped at gunpoint by two unknown individuals, forced into their car, told, under threat of harm, that he needed to recant, driven to the attorney's office for purposes of recanting, and effectively coerced into changing his story in the interview with the attorney's investigator. The victim asserted that the recantation was made under duress and was untrue; he reiterated that it was indeed defendant who was involved in the shooting. The attorney did testify at trial that he did not observe any conduct by the victim indicating that he was at the attorney's office and participating in the interview under duress, or that he otherwise appeared frightened.

*People v. White*, No. 326701, 2016 WL 4008532, at *1 (Mich. Ct. App. July 26, 2016) (footnote omitted). Petitioner's conviction was affirmed. *People v. White*, 500 Mich. 901, 887 N.W.2d 624 (2016), *reconsideration den.* 500 Mich. 1005, 895 N.W.2d 183 (2017).

In his habeas petition, Petitioner alleges as grounds for relief that he was denied his constitutional right to effective assistance of counsel under the Sixth Amendment when his trial attorney (1) failed to subpoena Investigator Gerald Borycz, and (2) failed to impeach prosecution witness Eric Bowler regarding his interaction with Investigator Borycz.[1]

### III. STANDARD OF REVIEW

Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Petitioner originally raised four claims in his habeas petition but this Court's predecessor, Judge Avern Cohn, found that Petitioner's third and fourth claims were unexhausted and gave Petitioner the option of staying the petition, withdrawing these unexhausted claims from the petition, or having the entire petition dismissed without prejudice. *White v. Winn*, No. 2:18-CV-11582, 2018 WL 3870077 at *1-2 (E.D. Mich. Aug. 15, 2018). Petitioner indicated to the Court that he wished to delete his third and fourth claims from his petition. ECF No. 7. Accordingly, on October 16, 2018, Judge Cohn dismissed the third and fourth claims from the petition and directed Respondent to file an answer addressing the merits of Petitioner's first and second claims.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## IV. DISCUSSION

Petitioner alleges in his first and second claims that he was denied the effective assistance of counsel.

Petitioner must satisfy a two-prong test in order to establish that he was denied the effective assistance of counsel. First, a criminal defendant must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Thus, a defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. at 687. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Court notes that on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable . . . [t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

6

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

The Court will discuss Petitioner's two claims together because they are interrelated. Petitioner first argues that trial counsel was ineffective for failing to subpoena for trial Gerald Borycz, the investigator who interviewed witness Eric Bowler and took his statement recanting his identification of Petitioner. Petitioner also claims that trial counsel was ineffective for failing to use the investigator's interview or an audiotape of that interview to impeach Bowler's trial testimony.

The Michigan Court of Appeals laid out the factual background concerning defense counsel's efforts on this issue:

> It is important to take into consideration the efforts made by defense counsel relative to the subject matter of the two alleged instances of ineffective assistance of counsel. In an emergency motion, counsel implored the court to allow him to take a deposition *de bene esse* of the investigator.[2] The motion indicated that the investigator was hospitalized and undergoing "extensive back reconstructive surgery" and that he could not be transported to court to testify. At the hearing on the motion, defense counsel explained the situation regarding the investigator's hospitalization, noted that the investigator wished to cooperate, and stated that even if counsel served the investigator with a subpoena, the investigator could not be transported to the court by EMS. By order dated February 13, 2015, the emergency motion was denied.

---

[2] The jury was selected on February 5, 2015, but the trial itself did not commence until February 24, 2015. Defendant's emergency motion was filed on February 13, 2015. (footnote in original).

7

On the first day of trial testimony and before any witnesses were called, defense counsel renewed his request to conduct a deposition *de bene esse* of the investigator. Counsel now submitted an affidavit from the investigator in which he averred that he had been diagnosed with a fractured spine and spinal stenosis, that he was hospitalized following two back surgeries and would remain hospitalized or in a rehabilitation facility for the near future, and that he was "unable to attend court proceedings," but would be available for a deposition if one could be arranged.[3] In the midst of dealing with a variety of issues, the trial court did not rule on the matter of deposing the investigator, but, again, there had already been an order entered rejecting defendant's initial request. Defense counsel also mentioned that he had the transcript and audiotape of the interview and that he would later seek to have those admitted for impeachment purposes. The victim at issue testified on the first day, describing the crime, identifying defendant as one of the perpetrators, acknowledging his recantation, and explaining the recantation and purported kidnapping. On cross-examination, defense counsel engaged in aggressive and extensive questioning regarding all of the surrounding circumstances relative to the recantation, such as the fact that the two alleged kidnappers were not in the room where the investigator conducted the interview, yet the victim said nothing to the investigator about any coercion. Defense counsel was able to elicit testimony that could reasonably be viewed as calling into question the truthfulness of the victim's claim that he had been kidnapped and coerced into recanting. Also, the victim again acknowledged that he had recanted his identification of defendant during the interview, indicating in the interview that he could not see the shooters when the shooting spree took place. At one point in the cross-examination, defense counsel began to read or paraphrase snippets from the transcript of the interview, asking the victim for confirmation or denial of the snippets as part of an attempt to impeach the victim. Over objection by defense counsel, the trial court ordered a halt to this manner of cross-examination. The victim's testimony was eventually completed and, following testimony by two other witnesses, the first day of the trial ended. Defense counsel did not attempt to have the interview transcript or audiotape admitted into evidence during the victim's testimony.

---

[3] The investigator noted that a transcript of the interview and a copy of the audiotape of the interview had been supplied to the prosecutor a year earlier and that they would also now be given to defense counsel. The investigator also averred that the victim had "appeared voluntarily" for the interview and then recanted, indicating that he had not seen who fired the shots. (footnote in original).

8

> On the second day of trial testimony, defense counsel again raised the issue regarding deposing the investigator, stating that the investigator remained hospitalized and unavailable and that serving the investigator with a subpoena would be "a waste of time." Defense counsel also argued that if he could not utilize testimony by the investigator, the trial court should permit the admission of the audiotape of the interview for impeachment purposes. The prosecutor maintained that defendant was attempting to bolster the impeachment of the victim through use of the audiotape, where the victim had already been confronted with his recantation on cross-examination. The trial court ruled that the audiotape was inadmissible, and there was no further mention or discussion about the investigator or a deposition, nor in regard to possibly admitting the transcript.

*People v. White*, 2016 WL 4008532, at *2–3.

Petitioner's claims are essentially interrelated. Petitioner argues that trial counsel was ineffective for failing to adequately impeach Eric Bowler's claim that his recantation was coerced after he was kidnapped by armed men and forced to go to attorney David Cripps' office and recant. Petitioner argues that trial counsel should have done this by subpoenaing Mr. Cripps' investigator, Gerald Borycz, who was present when Mr. Bowler made the statement, and/or counsel should have introduced Mr. Borycz's audiotaped interview with Mr. Bowler to impeach him with certain unspecified prior inconsistent statements.

> The Michigan Court of Appeals rejected the claim at great length as follows:

> This is the sum and substance of defendant's first alleged instance of ineffective assistance. We admit to having some difficulty discerning what exactly defendant is arguing to this panel. First, defendant is plainly not contending that counsel failed to impeach the victim with the interview-based recantation in and of itself, i.e., that the victim did not see the shooters. Indeed, the jury was fully aware of the recantation, as that information was elicited during the prosecutor's direct examination of the victim and again on

9

cross-examination by defense counsel. Defendant appears to be arguing that defense counsel failed to impeach, through use of the interview, the victim's claim that he recanted *under duress*. We initially note that defense counsel, by way of questions concerning the circumstances surrounding the alleged kidnapping and coercion, forcefully cross-examined the victim regarding his claim that he had recanted under duress. Defendant is apparently arguing that some statement made during the victim's interview was inconsistent with the victim's duress testimony, or that the entire interview somehow constituted a prior inconsistent statement in relation to duress. However, defendant does not identify any particular statement made during the interview that was inconsistent with the victim's testimony that he had recanted under duress, although there may have been such a statement.[4] Defendant thus fails to establish the factual predicate for his claim. Defendant likewise fails to establish the factual predicate for any claim, assuming it is being made, that the entire interview constituted a prior inconsistent statement, which presumed argument would also lack any legal support. Moreover, on cross-examination, defense counsel attempted to utilize the interview, by reference to the transcript, in order to challenge and impeach the victim's testimony, and the trial court precluded that cross-examination. Defense counsel cannot be deemed deficient for failing to pursue a matter, where the matter was in fact pursued by counsel but rejected by the trial court.

Defendant's argument also seems to suggest that defense counsel's shortcoming was a failure to impeach the victim while the victim was on the stand, as opposed to attempting to do so in defendant's case-in-chief, at which time counsel had sought admission of the audiotape. However, defendant seemingly accepts that the audiotape was inadmissible.[5] To the extent that defendant is arguing that the audiotape or transcript of the interview could have been admitted under MRE 613(b), but only during the victim's testimony, the argument fails because, again, defendant does not identify any inconsistent statement regarding duress. Furthermore, it is clear from the trial court's ruling that it was not prepared to admit the audiotape into evidence at any time, despite counsel's adamant request for admission. Additionally, there is no indication that the victim could not have been recalled to the stand

---

[4] For example, defendant does not argue that the victim stated in the interview that he was freely and voluntarily engaging in the interview. (footnote in original).

[5] We take no position on whether the audiotape was legally admissible or not outside the context of defendant's appellate arguments. (footnote in original).

10

for purposes of the requirement in MRE 613(b) to allow a witness the opportunity to explain or deny a prior inconsistent statement.

In sum, after giving defendant the benefit of assuming multiple constructions of his less than luminous appellate argument, defendant has failed to establish deficient performance by counsel or the requisite prejudice. Defendant has not identified any prior inconsistent statements *relative to duress*. And the jury was made fully aware of the recantation and the questionable components of the victim's kidnapping and coercion story. The jurors also heard from the attorney that the victim did not appear to be under duress when he showed up at the attorney's office to participate in the interview. Despite this evidence, the jury found defendant guilty. Reversal is unwarranted on the basis of ineffective assistance of counsel.

Finally, defendant argues that defense counsel was ineffective for failing to subpoena the investigator, contending that counsel should not have assumed that serving a subpoena on the investigator would have been futile. Defendant again fails to establish the factual predicate for his claim of deficient performance, nor has prejudice been shown. Given the investigator's affidavit about his medical situation, hospitalization, and the transportation problem, which averments were never disputed, defendant cannot show with any degree of certainty that subpoenaing the investigator would have actually produced his appearance in court under the circumstances. Also, except for a cursory reference in his affidavit that the victim appeared "voluntarily," there is nothing in the record revealing what the investigator would have testified to had he taken the stand. Further, the attorney testified that the victim did not appear to be under duress, yet the jury convicted defendant. We cannot fault defense counsel for taking the approach of repeatedly seeking approval by the court of a deposition de bene esse. Reversal is unwarranted.

*People v. White*, 2016 WL 4008532, at *3–4 (internal citation omitted) (emphasis original).

Petitioner's ineffective assistance of counsel claim fails for several reasons. First, Petitioner's counsel made several attempts to introduce the audiotaped interview between Mr. Borycz and Mr. Bowler, but the judge refused to allow him

11

to introduce the audiotaped interview to impeach Mr. Bowler. Trial counsel was not ineffective in failing to impeach Mr. Bowler with this audiotaped interview when counsel made several attempts to do so but the trial judge refused to admit the evidence. *See, e.g., Parker v. Scott*, 394 F.3d 1302, 1326 (10th Cir. 2005). Petitioner also failed to show that Mr. Borycz's audiotaped interview with Mr. Bowler contained any exculpatory or impeachment evidence, particularly any prior inconsistent statements; therefore, he has failed to show that counsel was ineffective for failing to successfully introduce this evidence. Petitioner's claim that the audiotaped interview contained prior inconsistent statements is too speculative to support Petitioner's ineffective assistance of counsel claim. *See Jackson v. Bradshaw*, 681 F.3d 753, 764-65 (6th Cir. 2012).

Second, counsel was able to elicit testimony from Mr. Bowler and Mr. Cripps that Mr. Bowler had recanted his identification of Petitioner. Counsel was also able to elicit testimony from both Mr. Bowler and Mr. Cripps which called into question Mr. Bowler's claim that he only recanted under duress. Mr. Cripps in particular testified as a defense witness that he had withdrawn from representing co-defendant Jonathan May after realizing that he would be called as a witness at the trial. ECF No. 11-11, PageID.579-80. Cripps testified that he had arranged for Mr. Bowler to be interviewed by his private investigator, Mr. Borycz. A man came into his office with Bowler. One person identified himself as Eric Bowler. Mr. Cripps did not ask

for any identification. Mr. Borycz interviewed Mr. Bowler and had tape recorded and transcribed the interview. After the interview was completed, the person that came in with Mr. Bowler left with him. *Id.* at PageID.580-84. Cripps testified that neither Mr. Bowler nor the person who accompanied him to Mr. Cripps' office seemed afraid or upset when they came in. Mr. Cripps did not see a gun in the possession of the person who came to the interview with Mr. Bowler. Mr. Cripps further testified that his office was only a hundred yards from Detroit Police Headquarters and the Wayne County Jail. *Id.* at PageID.584-87.

Petitioner was not prejudiced by counsel's failure to introduce Mr. Borycz's audiotaped interview with Mr. Bowler or call Mr. Borycz as a defense witness. This evidence was cumulative of other evidence in support of Petitioner's claim that Mr. Bowler had freely and voluntarily recanted his earlier statements to the police and his preliminary examination testimony identifying Petitioner as one of the shooters. *Wong v. Belmontes,* 558 U.S. at 22-23; *see also United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). The jury had significant evidence presented to it that Mr. Bowler had recanted his positive identification of Petitioner and that he had not been kidnapped or coerced into doing so. Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that Mr. Bowler falsely claimed to have recanted only under duress, additional evidence in support of Petitioner's defense

13

"would have offered an insignificant benefit, if any at all." *Wong,* 558 U.S. at 23; *see also Welsh v. Lafler*, 444 F. App'x 844, 852 (6th Cir. 2011) (defense counsel's failure to admit into evidence in prosecution for criminal sexual conduct audiotape of petitioner's conversation with victim at county fair, during which victim stated that petitioner did not touch him inappropriately, did not constitute ineffective assistance of counsel, given that witness admitted his prior inconsistent statements during trial testimony). Petitioner is therefore not entitled to habeas relief on his claims.

## V. Conclusion

Accordingly, the Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny

14

a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker*, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this Opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *See Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

The Court will also deny Petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

Based upon the foregoing, the petition for a writ of habeas corpus is **DENIED**, a certificate of appealability is **DENIED**, and leave to appeal *in forma pauperis* is **DENIED**.

**IT IS SO ORDERED.**

          s/Gershwin A. Drain_____
          GERSHWIN A. DRAIN
          UNITED STATES DISTRICT JUDGE

Dated: July 30, 2021

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
July 30, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager